UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEENAN WILKINS, aka NERRAH BROWN,

Plaintiff,

v.

CONNIE GIPSON, et al.,

Defendants.

No. 2:19-cv-01469 JAM CKD P

ORDER

I.  Introduction

Plaintiff, a state prisoner proceeding pro se, was found earlier in this action to be a three strikes litigant under 28 U.S.C. § 1915(g).  (ECF No. 15 at 2.)  Plaintiff was allowed to proceed in forma pauperis due to his allegations of imminent danger.  (Id. at 2-3.)

After screening the original complaint, the court found it to state potentially cognizable First Amendment and Eighth Amendment claims against defendants Smith and Miller, but no claims against other named defendants.  (ECF No. 15 at 5-6.)  Plaintiff chose to amend the complaint rather than proceed on those claims, and his First Amended Complaint (FAC) is now before the court for screening.  (ECF No. 17.)  See 28 U.S.C. § 1915A(a).

II.  Screening Standard

The court must dismiss a complaint or portion thereof if the prisoner has raised claims

that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Gailbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002); see also Steckman v. Hart Brewing Co., Inc., 143 F.3d 1293, 1295-96

(9th Cir. 1998) (on Rule 12(b)(6) motion, court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.")

III.     The First Amended Complaint

In the FAC, plaintiff asserts claims of deliberate indifference, retaliation, and due process violations against multiple defendants at California Health Care Facility (CHCF). All claims concern the 2019 decision to remove his single-cell status. Documents attached to the FAC indicate that the Mental Health Single Cell Review Committee (SCRC) and Intra-Disciplinary Treatment Team (IDTT) both concluded in November 2016 that single-cell status was appropriate for plaintiff for a six-month period. (FAC at 35.) On June 27, 2019, however, defendant Dr. M. Smith noted in a mental health chrono that plaintiff was "no longer eligible for single cell." (Id. at 42.)

At an August 8, 2019 meeting, the Institutional Classification Committee (ICC) reviewed plaintiff's "need to continue single cell."[1] (Id. at 44.) The meeting report noted:

> (S) [subject, i.e., plaintiff] was placed on Single Cell Status by committee on 1/30/2018 due to the recommendations of mental health, stating that due to the severity of subject mental health at the time. However Single Cell was not recommended for the subject to due custody factors. Subsequently on 6/27/2019 at the subject's [IDTT] meeting it was recommended the subject no longer required single cell status based on mental health care factors per subject's mental health clinician M. Smith.
>
> After a review . . . and a brief discussion with (S) during ICC, ICC notes there are no custodial factors which would preclude Double Cell and Dorm housing at this time. (S) is eligible for Double Cell and dorm housing based upon the following criteria: Integrated Housing: Racially Eligible (RE); Enemy/Safety Concerns: Noted; History of Aggression: In-Cell Assault History: None noted; (S) last and only RVR was for a fight on 7/25/2019, located on the tier. . . . (S) does not or has not demonstrated a significant pattern of in-cell . . . violence toward cellmates and is not known to be the victim of such violence. Based on the aforementioned, and after an extensive review of all present documentation, (S) is cleared for Double Cell housing.

(Id. at 44.)

---

[1] Plaintiff did not submit the August 8, 2019 ICC report, documenting the change to his housing status at issue in this action, with his original complaint. (See ECF No. 1.) Thus the court reviews it for the first time in conjunction with the FAC.

Plaintiff alleges that Dr. Smith told him that defendant Miller instructed her to change her single-cell recommendation, because plaintiff "pissed people off with a lawsuit." (FAC at 13.) Plaintiff also alleges that he had a "staff assault complaint pending on Heslop," who was present at his IDTT meeting and stated that plaintiff "did not need a single cell." (Id. at 11.) Plaintiff further alleges that, at the ICC meeting, defendant Sanchez requested that plaintiff's single-cell status be removed because Dr. Smith no longer recommended single-cell status. (Id. at 14-15.)

Plaintiff asserts that defendants Smith, Miller, Heslop, and Sanchez retaliated against him in violation of the First Amendment. (Id. at 20.) To establish a claim for retaliation under the First Amendment, a prisoner must show that a prison official took some adverse action against an inmate because of that prisoner's protected conduct, that the action chilled the inmate's exercise of his constitutional rights, and the action did not advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition, threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Here, the FAC fails to allege that the housing change did not advance a legitimate correctional goal as set forth in the August 8, 2019 ICC hearing report, which noted the recommendation of plaintiff's mental health provider and indicated that plaintiff was eligible for double-celling based on multiple factors. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) ("[A] successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored enough to achieve such goals. [Citations omitted.] The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."); see also Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (on Rule 12(b)(6) motion court need not accept as true allegations contradicted by exhibits attached to complaint).

Plaintiff also asserts that multiple defendants were deliberately indifferent to his safety by changing him to double-cell status despite his history of mental illness. (See FAC at 10.) The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are

subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). But conditions of confinement may be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner does not have a constitutional right to be housed in a single cell. See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981) (holding that double-celling does not violate Eighth Amendment when it does not involve conditions amounting to unnecessary and wanton pain); Ford v. Ramirez-Palmer, 301 F.3d 1043, 1051 (9th Cir. 2002) ("Double-celling as such is not constitutionally impermissible.").

In order for a prison official to be held liable for alleged unconstitutional conditions of confinement, the prisoner must allege facts that satisfy a two-prong test. Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The first prong is an objective prong, which requires that the deprivation be "sufficiently serious." Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at 834). In order to be sufficiently serious, the prison official's "act or omission must result in the denial of the 'minimal civilized measure of life's necessities." Lemire at 1074. The objective prong is not satisfied in cases where prison officials provide prisoners with "adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d at 732 ("[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing"). Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d at 731.

The second prong focuses on the subjective intent of the prison official. <u>Peralta</u>, 774 F.3d at 1082 (9th Cir. 2014) (citing <u>Farmer</u>, 511 U.S. at 837). The deliberate indifference standard requires a showing that the prison official acted or failed to act despite the prison official's knowledge of a substantial risk of serious harm to the prisoner. <u>Id.</u> (citing <u>Farmer</u>, 511 U.S. at 842); <u>see also</u> <u>Redman v. Cnty. of San Diego</u>, 942 F.2d 1435, 1439 (9th Cir. 1991). Mere negligence on the part of the prison official is not sufficient to establish liability. <u>Farmer</u>, 511 U.S. at 835. The court finds the allegations in the FAC too vague and conclusory to state a claim against any defendant under this standard.

Finally, plaintiff asserts that multiple defendants violated his federal right to due process at the August 8, 2019 ICC hearing. (FAC at 22.) "In general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments." <u>Bjorlin v. Hubbard</u>, 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010), citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972). Insofar as plaintiff seeks to assert an equal protection claim based on the ICC's housing decision, he fails to allege that he was intentionally treated differently from similarly situated inmates. <u>See</u> <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1166 (9th Cir. 2005) ("To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.").

The court has reviewed the FAC and finds that it fails to state a claim upon which relief can be granted under federal law. The FAC must be dismissed. The court will, however, grant leave to file a second amended complaint.

If plaintiff chooses to amend the complaint a second time, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. <u>See</u> <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980). Also, in his second amended complaint, plaintiff must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976).

Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

Finally, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case.  Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1.  The First Amended Complaint is dismissed for failure to state a claim;

2.  Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint."  Failure to file a second amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

Dated:  April 9, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/wilkins1469.Screen Out Complaint_fac